```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Richard Martin

    v.                                          Civil No. 16-cv-464-LM
                                               Opinion No. 2018 DNH 028

Nancy A. Berryhill, Acting
Commissioner of Social Security[1]


**O R D E R**

Richard Martin seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3), of the decision of the Acting Commissioner of the Social Security Administration, denying his application for disability insurance benefits and supplemental security income. Martin moves to reverse the Acting Commissioner's decision, contending that the Administrative Law Judge ("ALJ") erred in improperly evaluating and weighing the testimony of the state agency physician, by interpreting raw medical data, and by ignoring medical evidence in the record relating to manipulative limitations. For the reasons that follow, the decision of the Acting Commissioner is affirmed.

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017, replacing Carolyn W. Colvin. See Fed. R. Civ. P. 25(d).

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

**BACKGROUND**[2]

On June 13, 2013, Richard Martin applied for disability benefits and supplemental security income, claiming a disability that began on March 15, 2013, when he was in a car accident. Martin was 53 years old at the time of his application. He had previously worked in landscape construction, cooking and running

---

[2] A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 13).

a kitchen, working for a moving company, and working as a cashier and stocker.

On the date of Martin's car accident, he was taken to Dartmouth-Hitchcock Medical Center ("DHMC") for special care by the trauma service for spinal fractures and upper extremity weakness. While at DHMC, it was determined that Martin had suffered a facial fracture and a displaced fracture through his fibula. He was also diagnosed with central disc protrusions, degenerative disc disease, and soft tissue swelling. Martin was discharged from DHMC on March 18, 2013, and, on March 26, 2013, he underwent an outpatient surgical procedure to repair his facial injury.

In the months following the accident, Martin sought treatment for his spinal cord injury and upper extremity weakness. Treatment notes and physical therapy evaluations throughout 2013, 2014, and into early 2015 showed that Martin consistently made progress in his recovery from his injuries, although he continued to complain of pain, primarily in his neck.

In April 2014, Martin also developed a left knee ailment, which was eventually diagnosed as a torn meniscus.[3] On July 17,

---

[3] It appears that Martin's knee injury, for which he first sought treatment more than a year after his accident, was unrelated to the accident.

2014, he underwent a left knee arthroscopy. By October 2014, Martin reported significant improvement in his knee, and did not seek further treatment for the injury.

On April 6, 2015, a hearing before an ALJ was held on Martin's application for benefits. Martin was represented by an attorney and testified at the hearing.

On June 26, 2015, the ALJ issued an unfavorable decision. The ALJ found that Martin had severe impairments due to central cord syndrome, degenerative disc disease of the cervical spine, and degenerative disc disease of the lumbar spine. The ALJ also discussed numerous impairments that were medically determinable, but not severe within the meaning of the Social Security Act. He found that Martin's impairments did not meet or equal a listed impairment. The ALJ concluded that Martin had the residual functional capacity to do light work under 20 C.F.R. §§ 404.1567(b) & 416.967(b),[4] except that he was limited to occasional climbing of ladders, ropes, and scaffolds, kneeling, crouching and crawling. The ALJ also concluded that Martin

---

[4] Because the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. Part 416, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

4

could frequently climb ramps and stairs, balance, and stoop, and that he should avoid concentrated exposure to workplace hazards.

With that evaluation, the ALJ found that Martin could do his past relevant work as a cashier/checker and stocker. Therefore, the ALJ found that Martin was not disabled within the meaning of the Act. The Appeals Council denied Martin's request for review, making the ALJ's decision the Acting Commissioner's final decision.

**DISCUSSION**

In support of his motion to reverse the Acting Commissioner's decision, Martin contends that the ALJ erred by 1) improperly evaluating and weighing the testimony of the state agency physician, 2) interpreting raw medical data, and 3) ignoring medical evidence in the record relating to manipulative limitations. The Acting Commissioner moves to affirm.

An individual seeking social security income and/or disability insurance benefits is disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In determining whether

a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520. The claimant bears the burden through the first four steps of proving that her impairments preclude him from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity, which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, see 20 C.F.R. § 404.1545(a)(1), and his past relevant work, see id. at § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled. See id. at § 404.1520(a)(4)(iv). The ALJ's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

I. Weight Given to State Agency Physician's Opinion

Martin contends that the ALJ erred in giving great weight to the opinion of the state agency physician, Dr. Hugh Fairley, that Martin would be capable of performing light work with certain limitations as of March 14, 2014. Specifically, Dr. Fairley, who issued his opinion on January 24, 2014, stated that

Martin was "considered presently disabled" as of the date of his opinion. Admin. Rec. at 67. Dr. Fairley opined, however, that based on Martin's medical records, which showed consistent improvement in functionality since his accident, Martin would be able to perform light work with certain limitations as of March 14, 2014.

Martin criticizes the ALJ's reliance on Dr. Fairley's opinion for several reasons. He argues that 1) the ALJ failed to adequately explain Dr. Fairley's opinion that Martin should be considered disabled as of January 24, 2014, but yet was still capable of performing light work; 2) the ALJ failed to consider medical records post-dating Dr. Fairley's opinion showing that Martin's condition had not improved as Dr. Fairley expected; and 3) Martin developed new conditions after Dr. Fairley's opinion that supported a finding of disability.[5]

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). "Medical opinions are statements from

---

[5] Martin also notes that the ALJ gave Dr. Fairley's opinion great weight while giving the opinion of Martin's treating physician, Dr. Earl Freeman, little weight. The ALJ addressed Dr. Freeman's opinion and explained that he gave it little weight because it was not supported by the objective medical evidence, Dr. Freeman's own treatment notes, or Martin's daily activities. Martin fails to explain how the ALJ erred in that determination, and the court need not address the issue further.

7

acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1). Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that support or detract from the opinion. § 404.1527(c).

A. Explanation of Dr. Fairley's Opinion

This case presents an unusual set of circumstances. A claimant is disabled if he is unable to engage in any substantial gainful activity because of a medically determinable impairment "which has lasted or can be expected to last for a continuous period of not less than 12 months." §§ 423(d)(1)(A) & 1382c(a)(3)(A) (emphasis added). Here, the ALJ gave great weight to Dr. Fairley's opinion that Martin was disabled as of the date of the opinion, January 24, 2014, but that Martin's medical records and prognosis showed that he would be capable of light work with certain limitations and would not be disabled as of March 14, 2014, less than 12 months from the onset date of disability.

8

Martin asserts that the "ALJ failed to articulate how he determined [Martin] improved and failed to reconcile how he determined [Martin] could perform light work for the time period Dr. Fairley found [Martin] disabled." Doc. no. 8-1 at 6. His argument, however, appears to misconstrue Dr. Fairley's opinion as stating both that Martin should be considered disabled as of January 24, 2014, but was capable of performing light work with certain limitations as of that date. He faults the ALJ for failing to adequately explain his reasons for giving the opinion great weight.

Dr. Fairley, however, did not opine that Martin was capable of performing light work with certain limitations as of January 24, 2014. Instead, Dr. Fairley opined just the opposite—that Martin was disabled as of January 24, 2014, and therefore was <u>not</u> capable of performing light work on that date. The crux of Dr. Fairley's opinion was that based on Martin's medical records as of January 24, 2014, which showed consistent progress in Martin's recovery since his accident, Martin <u>would be</u> capable of light work with certain limitations as of March 14, 2014.

Therefore, the ALJ did not find, and therefore was not required to explain, why Martin could perform light work for the entirety of the 12-month period after Martin's accident.

B. <u>Medical Records Showing Lack of Improvement</u>

Martin contends that the ALJ failed to address the subsequent medical evidence in the record that showed that Martin had not improved as Dr. Fairley had predicted. As a result, he argues, Dr. Fairley's opinion is not substantial evidence to support the ALJ's decision.

The opinion of a reviewing consultant based on a "significantly incomplete record" cannot provide substantial evidence to support an ALJ's residual functional capacity finding, and therefore cannot bear "any significant weight." Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007); see Padilla v. Barnhart, 186 F. App'x 19, 21 (1st Cir. 2006). "A record is not 'significantly incomplete,' however, based merely on the fact that time has passed since the consultant's review and an incidental update in the claimant's condition has since occurred." Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, No. 16-cv-506-PB, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017); see Diggett v. Berryhill, No. 16-233-M, 2017 WL 3705072, at *1 (D.R.I. Aug. 25, 2017). "Rather, the change must be material." Giandomenico, 2017 WL 5484657, at *4 (internal quotation marks and citation omitted). Thus, an ALJ may rely on a consultant's outdated opinion if he determines that the evidence post-dating the opinion did not materially change the

record on which it was based. See Alcantara, 257 F. App'x at 334. "The record remains materially unchanged where the new evidence either reveals no greater limitations or is arguably consistent with the consultant's assessment." Giandomenico, 2017 WL 5484657, at *4.

Martin contends that medical evidence in the record after Dr. Fairley issued his opinion showed that Martin continued to be disabled, and that the ALJ failed to address this evidence. In support, Martin points to medical records relating primarily to his left knee and his spinal injury.

1. Paincare Centers

Martin first points to April 7, 2014 treatment notes written by Nurse Kelly DeFeo of Paincare Centers. He asserts that the ALJ failed to address the notes, which showed that Martin was complaining of pain in his neck and knee, as well as depression. The ALJ, however, did address Nurse DeFeo's April 7 treatment notes, discussing Martin's complaints at the appointment, the results of Nurse DeFeo's examination, and Martin's follow-up care. See Admin. Rec. at 21.

The ALJ explained why this and other evidence that post-dated Dr. Fairley's opinion did not undermine the opinion. In short, while the April 7th treatment notes may indicate that Martin still experienced pain as of that date, they do not show

11

resulting functional limitations that would materially change Dr. Fairley's opinion. See Bowden v. Astrue, No. CA 11-84 DLM, 2012 WL 1999469, at *7 (D.R.I. June 4, 2012) (discussing how claimant's various diagnoses and notes from providers post-dating state agency physician's opinion as to claimant's limitations did not undermine the opinion because the claimant "has identified no functional limitations resulting therefrom"); Carson v. Barnhart, 242 F. Supp. 2d 33, 39 (D. Me. 2002) ("The regulations require medical evidence of specific physical limitations rather than conclusory estimates of overall impairment of a body part."); Musto v. Halter, 135 F. Supp. 2d 220, 233 (D. Mass. 2001) ("Although the record is indeed peppered with references to [claimant's] depression, there is absolutely no indication that it rises to the level of interfering with his inability to engage in any substantial gainful activity." (internal quotation marks omitted)).[6]

---

[6] Martin also points to an April 17 physical therapy appointment during which Martin complained of problems holding a coffee cup. As with Martin's April 7th appointment with Nurse DeFeo and Paincare Centers, however, the ALJ did discuss the records from Martin's April 17 physical therapy appointment. See Admin. Rec. at 20. Even if he had not, however, the ALJ is not required to discuss records from every one of Martin's physical therapy appointments. See, e.g., Wright v. Astrue, No. CIV.A. 11-30247-KPN, 2012 WL 2914324, at *4 (D. Mass. July 16, 2012) ("An administrative law judge . . . need not explicitly refer to all of the evidence in his decision.").

2.  Spinal Injury

Martin argues that the ALJ did not review medical evidence in the record after Dr. Fairley's opinion that "revealed the long-term effects Plaintiff suffered from the trauma of the car accident, including marked degenerative disc disease and myelomalacia."  Doc. no. 8-1 at 8.  Martin adds that he "continually complained of pain in his cervical and lumbar spine, and continually showed limited range of motion and tenderness upon palpation."  Id. at 9.

Martin points to no specific medical records that the ALJ purportedly ignored, and instead simply states that the limitations he references are "shown in the Joint Statement of Facts."  Id.  Martin appears to be referring to the February 24, 2015 MRI of his lumbar spine, which showed degenerative disc disease, see doc. no. 13 at 8, and the report of his MRI of his cervical spine, taken that same day, in which the radiologist "suspect[s]" that Martin has myelomalacia, id.

Contrary to Martin's assertion, the ALJ did discuss the result of Martin's MRIs, as well as medical records after the MRIs.  For example, the ALJ noted that one of Martin's treating physicians, Dr. Jerry Knirk, stated in his records from a March 2015 appointment that Martin's lumbar spine MRI did not

13

correlate with Martin's reports of symptoms. Indeed, there are only two treatment notes post-dating Martin's February 2015 MRIs, including the one from his visit with Dr. Knirk. In both appointments, Martin complained primarily of neck pain, rather than pain in his back. See Admin. Rec. at 945 (listing "major problem" as neck pain); id. at 947 (noting Martin's appointment is related to his "neck pain").

Therefore, the ALJ did address the medical records relating to Martin's spine injury that post-dated Dr. Fairley's review, and adequately explained why they were not inconsistent with Dr. Fairley's opinion.

C. New Conditions

Martin argues that the ALJ erred in relying on Dr. Fairley's opinion because Martin developed new conditions after Dr. Fairley's review that supported a finding of disability. Specifically, he points to medical records showing that he had problems with his left knee after March 14, 2014. He again refers to his April 7, 2014 appointment with Paincare Centers when he complained of left knee pain. He notes that he received treatment from various physicians for his left knee pain over the next few months, before undergoing left knee arthroscopic surgery in July.

14

The ALJ discussed the evidence relating to Martin's left knee and found that the knee impairment was non-severe. Specifically, the ALJ discussed Martin's April 7 appointment with Paincare Centers and Nurse DeFeo, his treatment with Dr. Freeman for worsening knee pain over the next month, his June 2014 MRI of his knee, and his July 2014 surgery.

The ALJ further discussed Martin's medical records regarding his knee after his surgery. He noted that Martin went to physical therapy after his surgery, and that by October 2014, Martin reported that he was walking regularly, and had decreased pain and increased function. The ALJ further noted that Martin did not complain of knee symptoms or receive treatment for his knee impairment after that date.

The ALJ properly addressed the medical records regarding Martin's knee, which post-dated Dr. Fairley's opinion, and found that it was non-severe within the meaning of the Act and did not satisfy the 12-month requirement for disability. The ALJ permissibly found that Martin's knee impairment did not cause him disability, and his reliance on Dr. Fairley's opinion was not error on that basis. See Chabot v. U.S. Soc. Sec. Admin., No. 13-cv-126-PB, 2014 WL 2106498, at *13-14 (D.N.H. May 20, 2014) (holding that ALJ did not err in relying on state agency physician's opinion that did not take into account one year of

medical records because the claimant's additional impairments did not undermine state agency's opinion).

D. Summary

In sum, Martin has failed to show that the ALJ erred in relying on Dr. Fairley's opinion. See Wenzel v. Astrue, No. 11-cv-269-PB, 2012 WL 2679456, at *5 (D.N.H. July 6, 2012) (holding that ALJ did not err in relying on Dr. Fairley's outdated opinion because medical records post-dating the opinion were not inconsistent); Bianco v. Astrue, No. C.A. 09-21 S, 2010 WL 2465437, at *1 (D.R.I. June 14, 2010) (holding that the ALJ did not err in relying on state agency physician's opinion that did not take into account all medical evidence in the record because claimant failed to show that there was any "material change in his abilities after" the state agency physician issued his opinion (internal quotation marks omitted)).

II. Raw Medical Data

Martin argues that the ALJ impermissibly used his lay knowledge to interpret raw medical data. Specifically, he points to an x-ray of his left knee, three x-rays of his spine, an MRI of his left knee, two MRIs of his spine, surgical reports related to his left knee, and an EKG showing "anteroseptal ischemia." Martin analogizes this case to Bell v. Astrue, No.

11-cv-45-PB, 2012 WL 124841 (D.N.H. Jan. 17, 2012), in which the court reversed and remanded the Commissioner's decision denying benefits because the ALJ had interpreted MRI reports to show that the claimant's condition had not changed since the state agency physician's opinion.

In Bell, the ALJ interpreted the results of two MRIs to conclude that the record showed functional limitations consistent with the state agency physician's prior opinion. Id. at *9. In reversing and remanding the Commissioner's decision, the court noted that the ALJ determined what the MRIs meant in functional terms without the assistance of an expert, and therefore he had improperly interpreted raw medical data. Id. at *10.

Unlike in Bell, the ALJ in this case did not interpret raw medical data. Although Martin lists various diagnostic tests, he fails to point to any instances of the ALJ interpreting the results without medical assistance. For example, the ALJ referenced Martin's February 24, 2015 MRIs of his lumbar spine and his cervical spine, discussing the language noted in the MRI reports. But unlike in Bell, the ALJ did not attempt to translate the results into functional terms. Instead, the ALJ discussed treatment notes from Martin's various doctors after the date of Martin's MRIs, which provided functional

17

assessments. The ALJ then concluded that those assessments were consistent with Dr. Fairley's opinion. See Admin. Rec. at 22. And, as stated, Dr. Knirk discussed Martin's February 24, 2015 lumbar spine MRI and stated that the results "did not correlate with the claimant's reports of symptoms." Id.

In short, the ALJ did not interpret raw medical data in this case. Therefore, there was no error.

III. Evidence of Manipulative Limitations

Martin asserts that the ALJ ignored evidence in the record that showed he had manipulative limitations that were not included in the ALJ's residual functional capacity assessment. Specifically, Martin cites his hearing testimony that he experienced weakness, numbness, and difficulty using his arms to pick up and hold things. He also notes that he complained of pain in his hands and arms and weakness in his hands and fingers at several points in 2014 and 2015.

The ALJ addressed Martin's subjective complaints regarding his manipulative limitations. In addressing Martin's complaints, the ALJ discussed the considerations commonly known as the Avery factors. See Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986). "There are a number of such factors, including the claimant's daily activities, medications used, and other treatments or measures used to relieve symptoms." Floyd

v. Berryhill, No. 15-cv-456-PB, 2017 WL 2670732, at *5 (D.N.H. June 21, 2017) (citing § 416.929(c)(3)). "Although an ALJ must consider the Avery factors, he or she need not address each one." Id.

Here, the ALJ discussed how Martin's daily activities and his treatment notes did not support his alleged limitations. In addition, as the ALJ noted, despite two years of records, there was no objective medical evidence to support Martin's complaints that he had no use of his arms to reach or no use of his fingers to do fine manipulation. In short, although Martin points to complaints he made about pain and weakness in his arms and numbness in his hands, Martin's reliance on his subjective complaints do not show that the ALJ erred. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (When reviewing an ALJ's credibility determination, the court defers to the ALJ because he "observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence."); see also Conde v. Colvin, No. 15-cv-246-JD, 2016 WL 299017, at *5 (D.N.H. Jan. 25, 2016).

IV. Summary

The record shows that Martin continued to seek treatment for physical ailments from March 2013 until the hearing date. But it is the ALJ's role, not the court's, "to weigh and resolve

conflicts in the evidence," even when the record "could arguably justify a different conclusion." Chabot, 2014 WL 2106498, at *14; see Soderman v. Astrue, No. CIV.A. 08-40183-FDS, 2011 WL 4621400, at *9 (D. Mass. Sept. 30, 2011) ("Even if plaintiff is correct in contending that the administrative record contains evidence that could reasonably establish continuous disability, it does not necessarily follow that the ALJ lacked substantial evidence that it did not."). Because the ALJ's decision in assessing the medical evidence in the record is supported by substantial evidence, the Commissioner's decision is affirmed.

## CONCLUSION

For the foregoing reasons, the claimant's motion to reverse and remand (doc. no. 8) is denied. The Acting Commissioner's motion to affirm (document no. 11) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 9, 2018

cc: Counsel of Record